UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

JUAN JOSE ARDON ESCOTO,

Plaintiff,

-v.-

SOUTHPAW BREWING COMPANY, INC.,
THOMAS NEIDHART, individually, and
MATTHEW RAPPA, individually,

Defendants.
---------------------------------------------------------X

Civil Action No.

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff JUAN JOSE ARDON ESCOTO, by and through his attorneys, STILLMAN LEGAL, P.C., as and for his Complaint against Defendants SOUTHPAW BREWING COMPANY, INC., THOMAS NEIDHART and MATTHEW RAPPA, alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This action seeks to recover unpaid overtime wages, unpaid spread-of-hours pay, liquidated damages, statutory damages, interest, and attorneys' fees and costs for Plaintiff JUAN JOSE ARDON ESCOTO, a former cook employed by Defendants at a restaurant and brewery known as Southpaw Brewing Company at 501 Boulevard East, Suite E, Yaphank, New York 11980, in Suffolk County.

2. From on or about September 15, 2023 through September 15, 2026, Plaintiff worked for Defendants as a cook, preparing and cooking food. He worked six days per week and regularly worked between sixty-nine (69) and seventy-two (72) hours per week.

3. At all times relevant hereto, Defendants were required under 29 U.S.C. § 207 and under New York Labor Law § 650 et seq. and 12 NYCRR § 146-1.4 to compensate Plaintiff for all hours worked in excess of forty (40) hours in a workweek at a rate of not less than one and one-half times his regular rate of pay.

4. Defendants did not do so. Instead, Defendants compensated Plaintiff at his straight-time hourly rate for every hour he worked, including the twenty-eight (28) to thirty-two

(32) hours per week that he worked in excess of forty (40), and paid him no overtime premium at any time during his employment.

5. At all times relevant hereto, Defendants were also required under 12 NYCRR § 146-1.6 to pay Plaintiff one additional hour of pay at the basic minimum hourly wage rate for each day on which the interval between the beginning and the end of his workday exceeded ten (10) hours. That requirement applies to all employees of restaurants regardless of an employee's regular rate of pay. 12 NYCRR § 146-1.6(d). The spread of Plaintiff's hours exceeded ten hours on every day he worked, and Defendants never paid him spread-of-hours compensation.

6. Defendants also never provided Plaintiff with the written notice of his rate of pay that New York Labor Law § 195(1) requires at the time of hiring, and never furnished him with any payment of wages, a statement containing the information required by New York Labor Law § 195(3). The payroll statements Defendants did issue classified Plaintiff, an hourly cook, as a salaried employee; stated no number of hours worked, no regular hourly rate and no overtime rate; and reported gross wages of $500.00 for workweeks in which Defendants' own schedules record that they paid him $1,724.28. Those documents concealed Defendants' underpayment of Plaintiff's wages from him and prevented him from determining and seeking payment of the wages he was owed while he was still employed.

7. Plaintiff brings this action individually, on his own behalf, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law, and seeks compensatory damages, liquidated damages, statutory damages, pre-judgment and post-judgment interest, and attorneys' fees and costs.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Plaintiff's claims under the Fair Labor Standards Act pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9. This Court has supplemental jurisdiction over Plaintiff's New York Labor Law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution. All of Plaintiff's claims arise from the same employment relationship, the same workweeks, the same hours, and the same payment practices.

10. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

11. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Defendant SOUTHPAW BREWING COMPANY, INC. is a New York corporation whose principal office is located in Suffolk County and which operates its restaurant in Suffolk County, within this District, and is therefore deemed to reside in this District. In addition, a substantial part of the events and omissions giving rise to Plaintiff's claims — all of

the work Plaintiff performed and all of the payments and records at issue — occurred at Defendants' restaurant in Yaphank, Suffolk County, within this District.

12. Pursuant to Rule 1(d)(3) of the Guidelines for the Division of Business Among District Judges of this Court, this action is properly designated to the Central Islip courthouse, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Suffolk County and Plaintiff resides in Suffolk County.

## PARTIES

### Plaintiff

13. Plaintiff JUAN JOSE ARDON ESCOTO is, and at all times relevant hereto was, an adult individual residing in Coram, Suffolk County, New York. Defendants' employment and payroll records identify Plaintiff as "Juan Ardon."

14. Plaintiff was employed by Defendants at the restaurant located at 501 Boulevard East, Suite E, Yaphank, New York 11980, from on or about September 15, 2023 through September 15, 2026, when Defendants terminated his employment.

15. At all times relevant hereto, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e) and New York Labor Law §§ 190(2) and 651(5), and was not exempt from the overtime requirements of either statute. Plaintiff's duties were manual and were neither executive, administrative, nor professional within the meaning of the Fair Labor Standards Act or the New York Labor Law.

16. At all times relevant hereto, Defendants operated a restaurant within the hospitality industry as that term is defined by 12 NYCRR § 146-3.1, and Plaintiff was employed in that restaurant as a non-service employee within the meaning of 12 NYCRR § 146-3.3(b). Plaintiff did not receive tips, and no tip credit was taken against his wages.

### The Corporate Defendant

17. Defendant SOUTHPAW BREWING COMPANY, INC. is a domestic business corporation organized and existing under the laws of the State of New York. It was incorporated on December 17, 2021 under the name SOUTH PAW BREWING COMPANY, INC., and adopted its present name by a Certificate of Amendment filed with the New York Department of State on January 12, 2022. Its Department of State identification number is 6352651, the county of its principal office is Suffolk, and its status with the Department of State is active.

18. The address designated by Defendant SOUTHPAW BREWING COMPANY, INC. with the New York Secretary of State for service of process upon it is 6352 Route 25A, Wading River, New York 11792.

19. Defendant SOUTHPAW BREWING COMPANY, INC. owns and operates a restaurant and brewery, open to the public seven days per week, at 501 Boulevard East, Suite E, Yaphank, New York 11980, under the trade name Southpaw Brewing Company. It holds an on-premises restaurant liquor license issued by the New York State Liquor Authority for that location, license number 0340-25-123142, and previously held license number 0340-23-133476 for the same premises, originally issued May 16, 2023.

20. At all times relevant hereto, Defendant SOUTHPAW BREWING COMPANY, INC. was Plaintiff's "employer" within the meaning of 29 U.S.C. § 203(d) and New York Labor Law §§ 190(3) and 651(6). It had the power to hire and fire Plaintiff, set and controlled his work schedule and the conditions of his employment, determined the rate and method of his compensation, and maintained, or failed to maintain, records of his employment.

**<u>The Individual Defendants</u>**

21. Upon information and belief, Defendant THOMAS NEIDHART is an adult individual and is an owner and principal of Defendant SOUTHPAW BREWING COMPANY, INC. Upon information and belief, he was one of a small group of individuals who owned and directed the operations of the restaurant at 501 Boulevard East, Suite E, Yaphank, New York throughout Plaintiff's employment.

22. Upon information and belief, Defendant THOMAS NEIDHART had the authority to hire and fire the restaurant's employees, including Plaintiff, to set and alter their schedules and conditions of employment, and to determine the rates and methods by which they were paid. Throughout Plaintiff's employment, he visited the restaurant approximately every one to two months to supervise its operations and to meet with its general manager and with Defendant MATTHEW RAPPA. Upon information and belief, he possessed and exercised operational control over the restaurant's payroll practices, including the practice of paying employees part by check and the remainder in cash, and the practice of paying no premium for hours worked beyond forty in a workweek.

23. Upon information and belief, Defendant MATTHEW RAPPA is an adult individual and is an owner, principal and/or manager of Defendant SOUTHPAW BREWING COMPANY, INC. who worked at and directed the day-to-day operations of the restaurant at 501 Boulevard East, Suite E, Yaphank, New York throughout Plaintiff's employment.

24. Defendant MATTHEW RAPPA hired Plaintiff, negotiated his starting hourly rate, and set the days he was required to work. Defendant MATTHEW RAPPA determined and communicated each change in Plaintiff's rate of pay. Defendant MATTHEW RAPPA brought Plaintiff his wages at the restaurant at least twice each week. On September 15, 2026, Defendant MATTHEW RAPPA paid Plaintiff, called him outside, and terminated his employment. Defendant MATTHEW RAPPA exercised day-to-day control over the terms and conditions of Plaintiff's employment.

25. By reason of the foregoing, each of Defendants THOMAS NEIDHART and MATTHEW RAPPA was Plaintiff's "employer" within the meaning of 29 U.S.C. § 203(d) and 29 C.F.R. § 791.2, and within the meaning of New York Labor Law §§ 190(3) and 651(6).

26. Defendants SOUTHPAW BREWING COMPANY, INC., THOMAS NEIDHART and MATTHEW RAPPA jointly employed Plaintiff. They shared the power to hire and fire, jointly supervised and controlled Plaintiff's work schedule and the conditions of his employment, jointly determined the rate and method of his pay, and jointly maintained, or failed to maintain, records of his employment. Each is jointly and severally liable for the violations alleged herein.

## FACTUAL ALLEGATIONS

**Defendants' Coverage Under the Fair Labor Standards Act**

27. At all times relevant hereto, Defendants constituted an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A). Defendants had employees, including Plaintiff, engaged in commerce or in the production of goods for commerce, and employees handling, selling, or otherwise working on goods and materials that have been moved in or produced for commerce by any person, including food, beverages, produce, meat, packaged goods, kitchen equipment, cooking implements, tableware, and cleaning supplies that were manufactured, grown, or processed outside the State of New York and transported in interstate commerce.

28. Upon information and belief, Defendants' annual gross volume of sales made or business done was not less than $500,000, exclusive of excise taxes at the retail level that are separately stated, in each year of Plaintiff's employment. Defendants operate a full-service restaurant and brewery open to the public seven days per week, serving food and alcoholic beverages for consumption on the premises, with indoor and outdoor seating. Their staff during Plaintiff's employment included approximately four cooks and a fifth on weekends, two pizza makers, two dishwashers, three bar employees, three runners and five servers. Defendants received deliveries of goods at the restaurant at least twice each week. The precise amount of Defendants' annual gross volume of sales is within Defendants' exclusive knowledge and control.

29. In the alternative, Plaintiff was individually covered by the Fair Labor Standards Act because, in the course of his work as a cook, he regularly and recurrently handled, prepared, and worked on goods and materials that had moved in interstate commerce.

**Plaintiff's Employment, Schedule, and Hours**

30. Defendants hired Plaintiff as a cook on or about September 15, 2023. Plaintiff's duties consisted of preparing and cooking food served to Defendants' customers. He performed

those duties throughout his employment, and in or about July 2025 he was placed in charge of the kitchen.

31. Plaintiff did not work at his own convenience. Defendants set Plaintiff's schedule, assigned the days and hours he was to work, and required him to remain at work until his assigned tasks were completed.

32. Defendants did not require Plaintiff to punch in or out, and Defendants provided no time clock or other means by which Plaintiff could himself record the hours he worked. Defendants' manager instead recorded employees' hours from the restaurant's surveillance footage. Defendants then prepared and distributed to Plaintiff a weekly document setting out the hours he had worked and the amounts to be paid, required him to sign it, and took it back without providing him a copy.

33. During approximately his first month of employment Plaintiff worked seven (7) days per week. Thereafter he worked six (6) days per week, with Wednesday as his day off, throughout the remainder of his employment.

34. Plaintiff ordinarily began work at approximately 10:30 a.m. and finished between approximately 9:00 p.m. and 11:00 p.m. His shifts therefore lasted approximately ten and one-half (10.5) to twelve and one-half (12.5) hours. Defendants' own weekly records of Plaintiff's hours state the entire interval between the time he began work and the time he finished on each day, and deduct no meal period from it.

35. From the beginning of his employment until in or about April 2025, Plaintiff worked approximately seventy-two (72) hours per week. In or about April 2025 Defendants reduced his weekly hours, and from that time until the end of his employment he worked approximately sixty-nine (69) hours per week. Defendants' weekly records for the workweeks of January 19, 2026 and January 26, 2026 each state a total of sixty-nine (69) hours.

36. During every workweek of his employment, Plaintiff worked substantially more than forty (40) hours.

**<u>Plaintiff's Rate of Pay and Defendants' Payment Practices</u>**

37. Defendants agreed at hiring to pay Plaintiff $20.00 per hour. Defendants thereafter increased his hourly rate to approximately $21.00 in or about April 2024; to approximately $22.00 in or about January 2025; to approximately $24.00 in or about July 2025, when he was placed in charge of the kitchen; to approximately $25.00 in or about late 2025 or early 2026; and to approximately $26.00 in or about July 2026, where it remained until the end of his employment.

38. Defendants paid Plaintiff weekly. For approximately the first six months of his employment Defendants paid him entirely in cash. Thereafter Defendants paid him approximately $500.00 by check and the balance of his weekly wages in cash.

39. Defendants paid Plaintiff his straight-time hourly rate for every hour he worked. Defendants did not pay Plaintiff one and one-half times his regular rate of pay, or any premium at all, for the hours he worked in excess of forty (40) in a workweek.

40. Because Defendants compensated Plaintiff at his regular hourly rate for all hours worked and paid him no overtime premium, Defendants underpaid him by at least one-half of his regular hourly rate for each hour he worked over forty (40) in each workweek. The resulting weekly underpayments were approximately as follows: $320.00 per week for approximately twenty-four (24) workweeks at $20.00 per hour and seventy-two (72) hours, and a greater amount per week for approximately four (4) workweeks at $20.00 per hour during which Plaintiff worked seven days and in excess of seventy-two (72) hours; $336.00 per week for approximately forty (40) workweeks at $21.00 per hour and seventy-two (72) hours; $352.00 per week for approximately fifteen (15) workweeks at $22.00 per hour and seventy-two (72) hours; $319.00 per week for approximately eleven (11) workweeks at $22.00 per hour and sixty-nine (69) hours; $348.00 per week for approximately fifty-two (52) workweeks at $24.00 per hour and sixty-nine (69) hours; and $377.00 per week for approximately ten (10) workweeks at $26.00 per hour and sixty-nine (69) hours.

41. Over the approximately one hundred fifty-six (156) full workweeks of Plaintiff's employment, Defendants failed to pay Plaintiff approximately $53,055.00 in overtime premium compensation. That figure is an estimate based on the hours, rates, and payment practices alleged above, and is subject to proof, including proof drawn from records within Defendants' possession, custody, and control.

**Spread of Hours**

42. The spread of hours is the length of the interval between the beginning and the end of an employee's workday. 12 NYCRR § 146-1.6. On each day on which that interval exceeds ten (10) hours, an employee of a restaurant is entitled to one additional hour of pay at the basic minimum hourly wage rate, in addition to the minimum wage otherwise required. 12 NYCRR § 146-1.6(a).

43. That entitlement applies to all employees in restaurants, regardless of a given employee's regular rate of pay. 12 NYCRR § 146-1.6(d).

44. On each of the days Plaintiff worked in each workweek of his employment - six (6) days per week for the majority of his employment, and seven (7) days per week during approximately his first month - the interval between the beginning and the end of his workday

exceeded ten (10) hours. The spread of hours is measured from the beginning to the end of the workday and includes any break or off-duty interval falling between them.

45. The basic minimum hourly wage rate applicable to employees in the hospitality industry in Suffolk County, 12 NYCRR § 146-1.2, was $15.00 per hour in 2023, $16.00 per hour in 2024, $16.50 per hour in 2025, and $17.00 per hour in 2026. See New York Labor Law § 652(1)(b), (1-a)(b).

46. Defendants never paid Plaintiff any spread-of-hours compensation. Seven (7) qualifying days in each of approximately four (4) workweeks and six (6) qualifying days in each of approximately eleven (11) workweeks in 2023 at $15.00, approximately fifty-three (53) workweeks in 2024 at $16.00, approximately fifty-two (52) workweeks in 2025 at $16.50, and approximately thirty-six (36) workweeks in 2026 at $17.00 yield approximately $15,318.00 in unpaid spread-of-hours compensation. That figure is an estimate and is subject to proof.

**Defendants' Records, Notices and Statements of Wages**

47. Plaintiff was hired on an entirely verbal basis. At the time of hiring, Defendants did not provide Plaintiff with a written notice containing his rate or rates of pay and the basis thereof; the allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer and any doing-business-as names used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; or the employer's telephone number. Defendants did not provide Plaintiff with such a notice at any time during his employment, in English or in Spanish, which is Plaintiff's primary language. Defendants likewise never gave Plaintiff anything in writing stating the rate at which his overtime hours would be compensated.

48. Throughout his employment Defendants provided Plaintiff with a weekly printed document captioned "Employee Schedule," which set out the days and times Plaintiff worked, a total number of hours, an hourly rate, figures labeled as regular pay and overtime, a total, and the portions of that total to be paid by check and in cash. Defendants required Plaintiff to sign each such document and then took it back. Plaintiff was not permitted to keep a copy.

49. Defendants' documents for the workweeks of January 19, 2026 and January 26, 2026 each state an hourly rate of $20.65, total hours of sixty-nine (69), regular pay of $826.00, overtime of $898.28, a total of $1,724.28, and payment of $500.00 by check and $1,224.28 in cash. The stated rate of $20.65 was not the rate Defendants had agreed to pay Plaintiff and was not the rate Plaintiff understood himself to be earning.

50. The figure those documents label as overtime pay is computed at one and one-half times the stated rate of $20.65 for the hours in excess of forty (40). Defendants did not in fact pay Plaintiff any premium above his hourly rate for the hours he worked beyond forty (40). The total amounts Defendants paid Plaintiff each week were consistent with his actual agreed hourly

rate multiplied by all hours worked at straight time, and did not include compensation at one and one-half times the regular rate Defendants had agreed to pay him. Defendants' use of a lower, fictitious base rate on their records created the false appearance that overtime had been calculated and paid when it had not.

51. At no time during Plaintiff's employment did Defendants furnish him with a payment of wages, a statement containing the information required by New York Labor Law § 195(3) and 12 NYCRR § 146-2.3.

52. Defendants issued payroll statements covering only the portion of Plaintiff's wages that they paid by check. Those statements report Plaintiff's gross earnings as $500.00; describe the basis of his pay as "Salary," although Plaintiff was an hourly employee paid by the hour; and leave the entries for "Total Hours" and "Total Hrs Worked" blank. They state no rate of pay, no regular hourly rate, no overtime rate, no number of regular hours worked and no number of overtime hours worked.

53. For the workweek of January 26, 2026 Defendants' own two records of the same week cannot be reconciled with one another. Defendants' schedule for that workweek states that they paid Plaintiff $1,724.28, consisting of $500.00 by check and $1,224.28 in cash. The payroll statement Defendants issued for the pay period January 26, 2026 through February 1, 2026 reports gross earnings of $500.00 and states no hours at all. Approximately seventy-one percent (71%) of the wages Defendants' own schedule records that they paid Plaintiff for that week appear on no payroll statement.

54. Defendants' failures caused Plaintiff concrete harm beyond the statutory violations themselves. Because Defendants never told Plaintiff in writing what his regular rate of pay was, what his overtime rate would be, or on what basis his wages would be calculated, Plaintiff had no document from Defendants stating the terms against which the amounts they paid him could be measured. The payroll statements Defendants issued could not supply that information either: they showed no hours of any kind, no hourly rate and no overtime rate, and they reported less than a third of the wages Defendants actually paid him. The weekly schedules, which did show hours, stated a regular rate that was not his and an overtime figure computed on that incorrect rate, and Defendants took those documents back and left Plaintiff without a copy. As a result, Plaintiff could not calculate the overtime premium that the law required Defendants to pay him on his actual rate, could not determine whether any premium had in fact been included in the money he received, and had no retained record from which to reconstruct either. Defendants' documents instead gave his weekly pay the appearance of having been lawfully calculated. Plaintiff was therefore unable, while he was employed, to quantify the shortfall in his wages or to demand payment of it, and Defendants were able to continue underpaying him. Plaintiff's recovery of those wages was delayed in consequence.

**<u>Willfulness</u>**

55. Defendants' failure to pay Plaintiff overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

56. Defendants knew that overtime compensation at one and one-half times the regular rate was required. Defendants prepared and distributed weekly documents that expressly identified an overtime rate of one hundred fifty percent (150%) and that set out a separate line item for overtime pay. Defendants thus demonstrated their awareness of the overtime requirement while failing to satisfy it.

57. Plaintiff asked Defendant MATTHEW RAPPA about overtime pay. Defendant MATTHEW RAPPA told Plaintiff that the business was too small to pay overtime and that only large companies paid it. Defendants thereafter continued to pay Plaintiff no overtime premium.

58. Defendants failed to make, keep and preserve the records required by 29 U.S.C. § 211(c), 29 C.F.R. § 516.2 and 12 NYCRR § 146-2.1, notwithstanding that Plaintiff worked between twenty-nine (29) and thirty-two (32) hours beyond the statutory forty-hour threshold in every workweek for three years. Defendants recorded Plaintiff's hours on documents they required him to sign and then retained, and the payroll records they generated omitted his hours entirely and the greater part of his wages.

59. Defendants did not act in good faith and had no reasonable grounds for believing that their failure to pay Plaintiff overtime compensation and spread-of-hours compensation complied with the Fair Labor Standards Act or the New York Labor Law.

## FIRST CAUSE OF ACTION

**(Unpaid Overtime Wages Under the Fair Labor Standards Act, 29 U.S.C. § 207)**

60. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

61. At all times relevant hereto, each Defendant was Plaintiff's employer within the meaning of 29 U.S.C. § 203(d), and Plaintiff was Defendants' employee within the meaning of 29 U.S.C. § 203(e).

62. At all times relevant hereto, Defendants constituted an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A), and in the alternative, Plaintiff was individually engaged in commerce or in the production of goods for commerce.

63. Defendants violated 29 U.S.C. § 207(a) by failing to compensate Plaintiff at a rate of not less than one and one-half times his regular rate of pay for the hours he worked in excess of forty (40) in each workweek.

64. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a), and a three-year limitations period therefore applies to Plaintiff's claims under the Fair Labor Standards Act; those claims reach back to the date three years before the filing of this action. Plaintiff's claims under the New York Labor Law, which are governed by a six-year limitations period, encompass the entire period of his employment, including any workweeks that may fall outside the FLSA limitations period.

65. By reason of Defendants' violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime compensation, an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), and his reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**

**(Unpaid Overtime Wages Under the New York Labor Law)**

66. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

67. At all times relevant hereto, each Defendant was Plaintiff's employer within the meaning of New York Labor Law §§ 190(3) and 651(6), and Plaintiff was Defendants' employee within the meaning of New York Labor Law §§ 190(2) and 651(5).

68. Defendants violated New York Labor Law § 650 et seq. and 12 NYCRR § 146-1.4 by failing to compensate Plaintiff at a rate of not less than one and one-half times his regular rate of pay for the hours he worked in excess of forty (40) in each workweek.

69. The six-year limitations period of New York Labor Law §§ 198(3) and 663(3) applies to Plaintiff's New York Labor Law claims and encompasses the entire period of his employment. Defendants did not act in good faith and had no reasonable basis for believing that their failure to pay Plaintiff overtime compensation complied with the New York Labor Law.

70. By reason of Defendants' violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime compensation, liquidated damages in an amount equal to one hundred percent (100%) of the wages found to be due pursuant to New York Labor Law §§ 198(1-a) and 663(1), pre-judgment interest, and his reasonable attorneys' fees and costs.

71. Plaintiff does not seek to recover the same unpaid wages twice, and does not seek a cumulative award of liquidated damages under both the Fair Labor Standards Act and the New York Labor Law for the same unpaid wages.

**THIRD CAUSE OF ACTION**

**(Unpaid Spread-of-Hours Compensation Under the New York Labor Law, 12 NYCRR § 146-1.6)**

72. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

73. At all times relevant hereto, Defendants operated a restaurant and Plaintiff was employed in that restaurant within the meaning of the Hospitality Industry Wage Order, 12 NYCRR Part 146.

74. On each day Plaintiff worked, the interval between the beginning and the end of his workday exceeded ten (10) hours.

75. Defendants violated 12 NYCRR § 146-1.6 by failing to pay Plaintiff one additional hour of pay at the basic minimum hourly wage rate for each such day.

76. By reason of Defendants' violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid spread-of-hours compensation, liquidated damages in an amount equal to one hundred percent (100%) of the amounts found to be due pursuant to New York Labor Law §§ 198(1-a) and 663(1), pre-judgment interest, and his reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**

**(Failure to Provide a Wage Notice at Hiring, New York Labor Law § 195(1))**

77. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

78. New York Labor Law § 195(1)(a) and 12 NYCRR § 146-2.2 for employers in the hospitality industry, require an employer, at the time of hiring, to provide each employee with a written notice, in English and in the employee's primary language, containing the rate or rates of pay and the basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer and any doing-business-as names; the physical address of the employer's main office or principal place of business and a mailing address if different; and the employer's telephone number.

79. Defendants failed to provide Plaintiff with that notice at the time of hiring or at any time thereafter.

80. Defendants' failure caused Plaintiff a concrete injury in fact. Having never been told in writing what rate Defendants had agreed to pay him, what his overtime rate would be, or on what basis his wages would be computed, Plaintiff had no statement of the terms of his pay against which to measure the sums Defendants handed him each week. He was therefore unable to determine that Defendants were withholding the overtime premium owed to him, and unable

to identify, quantify and demand those wages during his employment. His recovery of those wages was delayed in consequence.

81. Defendants' violations of New York Labor Law § 195(1) were willful.

82. By reason of Defendants' violations, Plaintiff is entitled to recover from Defendants, jointly and severally, statutory damages of fifty dollars ($50) for each workday that the violations occurred or continued to occur, not to exceed five thousand dollars ($5,000), together with costs and reasonable attorneys' fees, pursuant to New York Labor Law § 198(1-b).

## FIFTH CAUSE OF ACTION

### (Failure to Furnish Accurate Wage Statements, New York Labor Law § 195(3))

83. Plaintiff repeats and realleges each of the foregoing paragraphs as though fully set forth herein.

84. New York Labor Law § 195(3) and 12 NYCRR § 146-2.3 for employers in the hospitality industry, require an employer to furnish each employee, with every payment of wages, a statement listing the dates of work covered by that payment; the name of the employee; the name of the employer; the address and telephone number of the employer; the rate or rates of pay and the basis thereof; gross wages; deductions; allowances claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked.

85. Defendants failed to furnish Plaintiff with any statement containing that information with any payment of wages, and the documents Defendants did furnish were inaccurate in the respects alleged above.

86. Defendants' failure caused Plaintiff a concrete injury in fact, as alleged above. Having been given no compliant statement with any payment of wages, Plaintiff could not calculate the overtime premium owed to him on his actual regular rate, and could not determine whether any premium had been included in the sums he received. He was therefore unable to quantify and demand the wages Defendants were withholding from him during his employment, and his recovery of those wages was delayed.

87. Defendants' violations of New York Labor Law § 195(3) were willful.

88. By reason of Defendants' violations, Plaintiff is entitled to recover from Defendants, jointly and severally, statutory damages of two hundred fifty dollars ($250) for each workday that the violations occurred or continued to occur, not to exceed five thousand dollars ($5,000), together with costs and reasonable attorneys' fees, pursuant to New York Labor Law § 198(1-d).

## DEMAND FOR TRIAL BY JURY

89. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JUAN JOSE ARDON ESCOTO respectfully requests that this Court enter judgment in his favor and against Defendants SOUTHPAW BREWING COMPANY, INC., THOMAS NEIDHART and MATTHEW RAPPA, jointly and severally, as follows:

A. Declaring that Defendants violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 207, and that Defendants' violations were willful;

B. Declaring that Defendants violated the overtime provisions of the New York Labor Law and 12 NYCRR § 146-1.4;

C. Declaring that Defendants violated the spread-of-hours provisions of 12 NYCRR § 146-1.6;

D. Declaring that Defendants violated the wage notice provisions of New York Labor Law § 195(1) and the wage statement provisions of New York Labor Law § 195(3), and that Defendants' violations were willful;

E. Awarding Plaintiff his unpaid overtime compensation in an amount to be determined at trial, estimated at not less than $53,055.00;

F. Awarding Plaintiff his unpaid spread-of-hours compensation in an amount to be determined at trial, estimated at not less than $15,258.00;

G. Awarding Plaintiff liquidated damages in an amount equal to one hundred percent (100%) of his unpaid wages, pursuant to 29 U.S.C. § 216(b) and New York Labor Law §§ 198(1-a) and 663(1), without duplicative recovery under both statutes for the same unpaid wages;

H. Awarding Plaintiff statutory damages of five thousand dollars ($5,000.00) for Defendants' failure to provide a wage notice at hiring, pursuant to New York Labor Law § 198(1-b);

I. Awarding Plaintiff statutory damages of five thousand dollars ($5,000.00) for Defendants' failure to furnish accurate wage statements, pursuant to New York Labor Law § 198(1-d);

J. Awarding Plaintiff pre-judgment interest on his unpaid wages recovered under the New York Labor Law at the rate of nine percent (9%) per annum pursuant to New York Civil Practice Law and Rules §§ 5001, 5002, and 5004;

K. Awarding Plaintiff post-judgment interest pursuant to 28 U.S.C. § 1961;

L. Awarding Plaintiff his reasonable attorneys' fees and the costs of this action pursuant to 29 U.S.C. § 216(b) and New York Labor Law §§ 198 and 663; and

M. Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
October 31, 2026

STILLMAN LEGAL, P.C.

*Lina Stillman, Esq*

Lina Stillman, Esq.
Attorneys for Plaintiff
42 Broadway, 12th Floor
New York, New York 10004
Tel: (212) 832-1000
ls@stillmanlegalpc.com
www.StillmanLegalPC.com